IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GINA DUBRAWSKY,

    Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commmmisioner of Social Security,

    Defendant.

Case No. 3:16-cv-00433-AA
OPINION AND ORDER

AIKEN, Judge:

  Plaintiff Gina Dubrawsky brings this action pursuant to the Social Security Act ("Act") to obtain judicial review of a decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's application for Title II disability insurance benefits ("DIB"). For the reasons set forth below, the Court reverses the Commissioner's decision and remands for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

  On December 21, 2011, plaintiff applied for DIB. Tr. 14. After her application was denied initially on July 24, 2012 and upon reconsideration on January 25, 2013, plaintiff appeared and testified at a hearing on July 30, 2014 before an Administrative Law Judge ("ALJ"). *Id.* On August 29, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 26. After the Appeals Council declined her request to find her disabled, plaintiff filed a complaint in this Court. Tr. 1.

## STATEMENT OF FACTS

Born on June 7, 1974, plaintiff suffers from degenerative joint disease of both knees, degenerative joint disease of the left hip, depressive disorder, anxiety disorder, borderline intellectual function, and opiate dependence in partial remission.[1] Tr. 9. Plaintiff's obesity compounds these impairments. Tr. 258. Plaintiff's depression, memory, concentration, and other cognitive issues exacerbate her pain symptoms. Tr. 18. While evidence conflicts as to whether plaintiff completed the tenth or eleventh trade, Tr. 38, 77 & 158, it is undisputed plaintiff never graduated high school. She worked for eleven years as a mental health attendant for Oregon's Department of Human Services. Tr. 60 & 222.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (citation omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must

---

[1] Plaintiff's treating physician, Dr. Prapong, also diagnosed plaintiff with fibromyalgia. Although that diagnosis was corroborated by pain specialists, the ALJ found it not "medically determinable" because the record does not document "fibromyalgia tender point testing or control point testing." Tr. 17 & 448.

demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether the plaintiff is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a plaintiff is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C .F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the plaintiff has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; *accord* 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the plaintiff's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; *accord* 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the plaintiff can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the plaintiff can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner.

At step five, the Commissioner must establish that the plaintiff can perform other work existing in significant numbers in the national and local economy. *Yuckert*, 482 U.S. at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566(b).

//

# THE ALJ'S FINDINGS

At step one of the five-step process outlined above, the ALJ assumed but did not decide that plaintiff had not engaged in substantial gainful activity since April 2, 2011. Tr. 16. The ALJ noted that the plaintiff appeared to retain a job beyond April 2, 2011, given that the State of Oregon issued a paycheck to plaintiff on September 1, 2011.[2] Tr. 16, 158 & 217. Even though the "exact date the [plaintiff] last worked is unclear," the ALJ found plaintiff "not disabled . . . at a later step" in the sequential analysis and continued to step two. Tr. 16.

At step two, the ALJ found that plaintiff suffers from the following severe impairments: "[d]egenerative joint disease of both knees" and "of the left hip; a depressive disorder; an anxiety disorder; borderline intellectual functioning; and opiate dependence, in partial remission." *Id.* At step three, the ALJ found that plaintiff's impairments, whether considered singly or in combination, neither meet nor are the medical equivalent of a listed impairment. *Id.*

The ALJ found that plaintiff has the residual functional capacity to perform light work. The ALJ imposed the following additional limitations: plaintiff "can only occasionally engage in climbing[,]" "kneeling, crouching and crawl;" "needs to alternative between sitting and standing approximately once every hour;" and is "limited to simple, routine work." Tr. 18. The ALJ also found that plaintiff should only have "occasional contact with supervisors and coworkers" and "should not work with the public." *Id.*

At step four, the ALJ found that plaintiff could not perform her past relevant work as a mental health attendant. Tr. 25 & 61. At step five, the ALJ found that plaintiff could perform a significant number of jobs existing in the national and local economy despite her impairments, based on the testimony of a vocational expert ("VE"). Tr. 25–26. For example, the VE testified

---

[2] The ALJ also noted plaintiff's receipt of $10,935.81 in 2012, but found that money was not earned income. Instead, the money was an arbitration award paid by her former employer, who fired her. Tr. 16.

that plaintiff could work as an office helper or mailroom sorter. Tr. 26. Accordingly, the ALJ found plaintiff not disabled within the meaning of the Act. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding plaintiff's symptom testimony not fully credible; (2) giving the opinion of a treating physician, Wijan Prapong, M.D., little weight; and (3) giving the opinion of examining psychologist, John Adler, Ph.D., some weight.

I.    *Plaintiff's Symptom Testimony*

Plaintiff argues that the ALJ failed to articulate specific, "clear and convincing" reasons for rejecting plaintiff's testimony. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (explaining that under evolving Ninth Circuit precedent, ALJs must support their adverse credibility determination with not only "clear and convincing" evidence but the support must also be "specific"). Defendant argues the ALJ supported by reasons with substantial evidence and should be affirmed.

To determine the appropriate standard for evaluating a plaintiff's symptom testimony, the Ninth Circuit applies a two-step test. First, courts consider "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if [the ALJ] gives specific, clear and convincing reasons for the rejection." *Id.*; *see Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (requiring ALJs to identify affirmative evidence of malingering before courts can review credibility determinations under a more forgiving standard of review). Ultimately, when determining whether clear and convincing reasons support the reason to

discredit plaintiff's symptom testimony, ALJs identify "what testimony is not credible and what evidence undermines the [plaintiff's] complaints" because "[g]eneral findings are insufficient."

*Lester*, 81 F.3d at 834.

SSR 16–3p, *available at* 2016 WL 1119029, clarifies the inquiry into plaintiff's subjective symptom testimony.[3] *See generally Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (explaining that Social Security Rulings "do not carry the 'force of law,' but

---

[3] Effective March 16, 2016, the Social Security rescinded SSR 96–7p and adopted SSR 16–3p in its stead. Most of this Court's decisions since SSR 16–3p's found it unnecessary to decide whether the guidance applies retroactively because the ALJ's treatment of the plaintiff's symptom testimony would be upheld whether or not SSR 16-3p applied. *See, e.g., Upham v. Berryhill*, 2017 WL 452007, at *7, n.2 (D. Or. Feb. 2, 2017); *Hoy v. Comm'r of Soc. Sec.*, 2016 WL 8198528, at *4 (D. Or. Dec. 16, 2016), *report and recommendation adopted sub nom.* 2017 WL 462008 (D. Or. Feb. 2, 2017); *Anderson v. Colvin*, — F. Supp. 3d —, 2016 WL 7013472, at *10 n.8 (D. Or. Nov. 30, 2016); *Willis v. Colvin*, 2016 WL 4942000, at *3 n.3 (D. Or. Sept. 15, 2016); *Dunkel v. Colvin*, 2016 WL 4034800, at *6 n.3 (D. Or. July 26, 2016); *Chavez v. Colvin*, 2016 WL 8731796, at *6 n.1 (D. Or. July 25, 2016). The decisions that decide the question of retroactivity are split. *Compare, e.g., Mesecher v. Colvin*, 2016 WL6666800, at *4 (D. Or. Nov. 10, 2016); *Messmer v. Colvin*, 2016 WL 5339728, at *3 (D. Or. Sept. 23, 2016) (applying SSR 16–3p to a 2013 denial of benefits without addressing retroactivity); *and Bowlin v. Colvin*, 2016 WL 5339591, at *8 (D. Or. Aug. 18, 2016) (same), *report and recommendation adopted*, 2016 WL 5339578 (D. Or. Sept. 21, 2016) *with, e.g., Bahles v. Comm'r Soc. Sec. Admin.*, 2017 WL 1293982, at *3 (D. Or. Apr. 4, 2017) (determining that SSR 16–3p "does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); *Spain v. Colvin*, 2017 WL 517795, at *5 (D. Or. Feb. 8, 2017); *and Colton v. Colvin*, 2016 WL 7015669, at *4 (D. Or. Sept. 28, 2016), *report and recommendation adopted*, 2016 WL 6986504 (D. Or. Nov. 28, 2016).

SSR 16-3p is applicable in this case for two reasons. First, SSR 16–3p's policy of eschewing global credibility determinations based on plaintiff's characteristics and propensities for truthfulness and directing ALJs to focus on plaintiff's subjective symptom testimony's consistency with the record is consistent with SSR 96–7p's policy proscription that "credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility." *See Pope v. Shalala*, 998 F.2d 473, 483 (7th Cir. 1993) (explaining that courts should apply rules retroactively that "simply clarify[] an unsettled or confusing area of the law" and do not reflect a substantive change in the law), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 n.1 (9th Cir. 1996) (declining to decide the issue of retroactivity of revised Social Security regulations because "the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit caselaw, both of which clearly apply here"). Second, defendant cites SSR 16–3p as authority, effectively conceding that the newly clarified guidelines apply to the ALJs' treatment of plaintiff's symptom testimony.

they are binding on ALJs nonetheless"). ALJs can properly consider the consistency of the symptoms with objective medical evidence and with the plaintiff's own statements, recognizing that "individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals." SSR 16–3p, 2016 WL 1119029 at *4. However, as SSR 16–3p clarifies, ALJs "will not asses an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation" because the weight ALJs give symptom testimony does not turns on whether plaintiff "is a truthful person." *Id.* at *10. As such, "pursuant to SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination." *Anderson*, 2016 WL 7013472 at *10 n.8. Instead, ALJs "must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments[,]" SSR 16–3p, 2016 WL 1119029 at *10, and "more closely follow [SSA] regulatory language regarding symptom evaluation." *id.* At *1 n.1. "[I]t is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered" because the ALJs' reasons must be "clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *9. Specifically, the Commissioner recommends assessing:

> (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file.

*Hoy*, 2016 WL 8198528 at *3 (summarizing SSR 16–3p, 2016 WL 1119029 at *6–7).

Applying the traditional two-step standard for determining the ALJ's treatment of subjective symptom testimony, the ALJ found that the objective medical evidence could support the symptoms plaintiff asserts. Tr. 20. The ALJ did not explicitly find and defendant does not argue that plaintiff malingered. Therefore, the ALJ was required to support his decision to give plaintiff's subjective symptom testimony less than full weight with specific, clear and convincing reasons.

Although the ALJ does not explicitly identify what weight he accorded plaintiff's subjective symptom testimony, he accorded plaintiff's testimony "diminished" weight. Tr. 22. The ALJ only found plaintiff's subjective symptom testimony credible to the extent that it supported plaintiff's "need to alternate between sitting and standing approximately every hour." Tr. 23. The ALJ cited several justifications for giving plaintiff's testimony less weight, including: (1) plaintiff's "history of opioid dependence", Tr. 21; (2) plaintiff's "focus on obtaining pain medication rather than on treatment," *id.*; (3) plaintiff's inconsistent statements regarding her activities of daily living, Tr. 22; (4) plaintiff's testimony that "she felt capable of some type of work activity," Tr. 23; (5) plaintiff's signs of improvement with treatment, Tr. 20; (6) the lack of support for plaintiff's "allegations of disabling pain" in the "treatment records and objective evidence," *id.*; and (7) plaintiff's "lack of cooperation with the disability process," Tr. 22.[4] The Court considers each justification in turn, recognizing that the Court may still uphold

---

[4] The ALJ also noted plaintiff's work history. Although it is not entirely clear whether the ALJ relied on it in evaluating plaintiff's subjective symptom testimony, the Court finds plaintiff's work history does not convincingly bears on ability to maintain gainful employment. Plaintiff left her employment with Oregon's Department of Human Services after she took unauthorized sick time and at first, her employer reduced her salary for three months. Tr. 22–23. Plaintiff negotiated her resignation in the context of disciplinary charges. Tr. 23. At best, the Court could construe the ALJ's comments as highlighting an inconsistency with plaintiff's testimony to her doctor that she was unsure why her employer fired her. Without more of an explanation of how this observation affects the reliability of plaintiff's symptom testimony, the Court cannot find the ALJ's reason a specific, convincing, or clear justification to give plaintiff's testimony less than

the ALJ's decision to accord plaintiff's subjective symptom testimony less than full weight even if some of the ALJ's reasons are not specific, clear, and convincing. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). For the reasons set out below, the Court finds substantial evidence and specific, clear, and convincing reasons support the ALJ's determination to give little weight to plaintiff's subjective symptom testimony.

First, the ALJ found plaintiff's history of drug use justified putting diminished weight on plaintiff's subjective symptom testimony. Plaintiff argues that the ALJ may only consider a history of drug use when determining whether it is a material factor contributing to plaintiff's disability. As such, plaintiff asserts the ALJ's finding was premature, unnecessary, and prejudicial. Defendant responds by citing *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001), for the proposition that drug-seeking behavior alone justifies discrediting a plaintiff's subjective symptom testimony. Neither party correctly states the law because plaintiff's drug use could be relevant to determining how much weight to assign plaintiff's testimony. However, drug-seeking behavior alone is insufficient to justify an adverse credibility determination. Under SSR 16–3p, ALJs may not consider character evidence or a plaintiff's general tendencies towards truthfulness in weighing subjective symptom testimony. *See Anderson*, 2016 WL 7013472, at *10, n.8 ("[T]he ALJ is no longer tasked with making an overarching credibility determination.").

Under *Edlund*, 253 F.3d at 1157, inconsistent statements about the severity of plaintiff's symptoms may be evidence of symptom exaggeration, a specific, clear, and convincing reason to diminish the weight of plaintiff's testimony. *See id.* Here, treatment notes from Dr. Prapong

---

full weight, particularly in light of the unclear extent to plaintiff's mental health and cognitive limitations. Moreover, as SSR 16–3p clarifies, plaintiff's character or overall truthfulness is not specifically or convincingly relevant to the symptom evaluation ALJs perform to determine plaintiff's RFC.

support the inference that plaintiff exaggerated her pain symptoms to receive pain medication. Tr. 347 & 440. Further, two other pain specialists were unable to conclude the true extent of her pain symptoms and questioned the authenticity of plaintiff's pain testimony. Tr. 400 & 451. The Court accordingly finds the ALJ articulated a clear, convincing, and specific reason to give the extent of plaintiff's pain testimony less than full weight.

Second, the ALJ explained he did not fully credit plaintiff's testimony because plaintiff did not fully cooperate with the disability process by missing three of her consultative exams. Under 20 C.F.R. § 404.1518, ALJs may deny benefits where plaintiffs fail or refuse to take part in a consultative examination that the Social Security Administration arranges. However, before making an adverse decision on a plaintiff's failure to attend an examination, the ALJ must consider whether plaintiff had a good reason, including whether plaintiff's "plaintiff's physical, mental, educational, and linguistic limitations" contributed to the absence. *Id.*

Here, plaintiff missed her first scheduled appointment with Dr. Adler on July 12, 2012, even though the Commissioner accommodated plaintiff and arranged travel to Dr. Adler's office. Tr. 70. Plaintiff cancelled her November 20, 2012, appointment with Dr. Adler because the appointment was never confirmed and instead saw Dr. Adler on December 10, 2012. Tr. 296–97 & 303. Finally, plaintiff missed her January 22, 2013, follow-up for additional testing. Tr. 300. Plaintiff argues there is evidence in the record that shows she missed appointments due to her cognitive limitations. On slightly different facts, that argument might have been persuasive. *See Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992) ("[I]t would be contrary to the purpose of the S.S.I. program to affirm the Secretary's decision as based on [plaintiff's] failure to cooperate, when the record suggests the failure may be due to the very mental illness that rendered [plaintiff] eligible for benefits."). Had plaintiff missed only one exam, the ALJ likely would

have had an obligation to reschedule pursuant to the duty to "develop [a] complete medical history" in Social Security disability cases. 20 C.F.R. § 404.1512(b)(1). Here, however, plaintiff's persistent absences thwarted accurate testing, limiting the evidence available to the ALJ. The ALJ permissibly concluded this pattern constituted a failure to cooperate within the meaning of § 404.1518. *See Chase v. Colvin*, 665 F. App'x 583, 586 (9th Cir. 2016) (missing two consultative exams without good reason exhausts the ALJ's duty to develop the record). Plaintiff's failure to cooperate is a clear, convincing, and specific ground for discrediting her testimony as it relates to her mental health and cognitive limitations. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Third, the ALJ discredited plaintiff's testimony based on her focus on retrieving pain medication rather than making lifestyle changes to mitigate her symptoms. Defendant argues plaintiff's conservative treatment suggests her symptoms are as not as severe as she alleges. As the Ninth Circuit explained, "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn*, 495 F.3d at 638. While the failure to seek treatment in all contexts is not a legitimate reason for discrediting a plaintiff's subjective symptom testimony, it is where plaintiffs allegedly suffer from severe pain because "a person's normal reaction is to seek relief from pain[.]" *Id.* By contrast, "where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, the approach to credibility makes little sense." *Id.*

The Court first notes that the ALJ's finding that plaintiff was focused on obtaining pain medication and had a conservative treatment plan largely rested on ambiguous evidence. For example, the ALJ found that plaintiff's failure to pick up a Cymbalta prescription is inconsistent

with plaintiff's claims of severe pain and depression. The record contains evidence both that Cymbalta helped plaintiff manage her pain and that plaintiff felt Cymbalta made things worse. *Compare* Tr. 22 & 342 *with* Tr. 347. There is also evidence plaintiff had difficulty affording Cymbalta. Tr. 336–37. Given this evidence, the Court cannot conclude this is a specific, clear, and convincing reason to discredit plaintiff's testimony. The ALJ also cited plaintiff turning down her insurance company's offer for to provide free chiropractic and massage care. Tr. 22 & 78. But because this is not a doctor's prescription or offer for treatment for pain, it is not a specific, clear, and convincing reason to discredit plaintiff's testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (explaining that "unexplained, or inadequately explained, failure to seek treatment or follow a *prescribed course of treatment*" may support an adverse credibility finding) (emphasis added). Substantial evidence does, however, support the ALJ's finding that despite the fact that multiple physicians urged plaintiff to attend pain management classes, plaintiff attended only one pain management session. Tr. 322, 326–28, 450, 453–54 & 460; *see also* Tr. 399 (explaining plaintiff "recognizes [her] lifestyle contributions to her pain" and "is excessively relying upon passive coping strategies").

Even assuming that the ALJ's finding that plaintiff was focused on obtaining medication is supported by substantial evidence, however, the ALJ erred by failing to comply with Social Security rules prohibiting ALJs from drawing any inferences from the plaintiff's failure to follow prescribed treatment without first providing an opportunity for the plaintiff to explain or provide additional information. As SSR 16–3p provides, the Commissioner "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16–3p, 2016 WL 1119029 at *8.

Possible considerations include side effects of medication, inability to pay, and the effect of a plaintiff's mental impairments on her ability to appreciate the need for treatment. *Id.* at *9; *see Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (explaining that plaintiffs have good reasons for failing to follow prescribed treatment when noncompliance is attribute to mental illness as opposed to mere "personal preference"); 20 C.F.R. § 416.930(c) (providing examples of "[a]cceptable reasons for failure to follow prescribed treatment"). There is no evidence the ALJ considered alternative explanations of plaintiff's conservative treatment, such as plaintiff's inability to pay for treatment or plaintiff's mental health. *See* Tr. 314 & 402 (indicating the poor state of plaintiff's finances). Therefore, plaintiff's supposedly conservative treatment is not a convincing reason to discredit plaintiff's testimony.

Fourth, the ALJ discredited plaintiff's testimony on the basis that she allegedly made inconsistent statements about her activities of daily living. Before finding home activities suggest that a plaintiff is not actually disabled, the ALJ must explain how the skills are transferrable to the world environment. *Fair*, 885 F.2d at 603 ("[M]any home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). Statements regarding activities of daily can also justify affording plaintiff's subjective symptom testimony less than full weight if they "contradict [the plaintiff's] other testimony." *Orn*, 495 F.3d at 639.

The Court finds no inconsistency supported by substantial evidence. A doctor's note indicates that plaintiff tries to walk multiple times each day, but because neither the note nor other evidence indicates whether plaintiff is successful or how long her walks are, it is unclear how this statement indicates plaintiff is capable of working or is inconsistent with her symptom testimony. Tr. 388. Even doctors who received plaintiff's testimony on her activities of daily

living found the extent of her activity vague. *Id.* While plaintiff gave statements that she tries walking elsewhere in the record, the record is equally ambiguous there as well. *See* Tr. 357 & 394.

For a similar reason, there is no inconsistency between plaintiff's indication that she can help with laundry for ten minutes and her testimony that she is unable to work an eight hour day. Tr. 165; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (recognizing "that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations" and underscoring that "sporadic" activity "punctuated with rest" do not conflict with a disability finding). Furthermore, helping with laundry for a short period of time is not transferable to a work environment. Plaintiff need not be "utterly incapacitated[,]" *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), or "vegetate in a dark room[,]"*Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), to qualify for disability benefits.

The ALJ identified no clear inconsistency between plaintiff's daily activities and her symptom statements. The ALJ also failed to explain how plaintiff's activities are transferable to work environment. *See Mitchell v. Colvin*, 584 F. App'x 309, 313 (9th Cir. 2014) (caring for children and tending to household chores are "so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace") (quoting *Orn*, 495 F.3d at 639). Therefore, the Court finds the ALJ's fourth reason for discrediting plaintiff's testimony unpersuasive.

Fifth, the ALJ discredited plaintiff's testimony because she indicated "she felt capable of some type of work activity." Tr. 23. The ALJ points to a September 8, 2011 doctor's visit where plaintiff hoped that "she can find alternative work." Tr. 286. The ALJ also noted that plaintiff received unemployment benefits in 2011, and that to qualify for such benefits

"applicants must typically affirm that they are capable of working." Tr. 23. Neither piece of evidence directly and convincingly bears on plaintiff's symptom testimony because it is unclear whether the work plaintiff hoped to find would have been substantial gainful activity within the meaning of the Act. *Cf. Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (holding that an ALJ errs by discrediting symptom testimony based receipt of unemployment benefits when the record does not reveal whether the plaintiff was looking for full- or part-time work).

Sixth, the ALJ found plaintiff's testimony of disabling limitation inconsistent with plaintiff's signs of symptom improvement after taking certain medications and regimens. Because plaintiff testified that her pain symptoms improved after starting a rigorous methadone treatment, the ALJ provides a clear, convincing, and specific reason to afford plaintiff's previous pain testimony less weight. However, to the degree that the ALJ was referring to improvements due to plaintiff's change from Effexor to Cymbalta, he erred. The fact that "symptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time" does not justifying making the global determination plaintiff's subjective symptom testimony deserves diminished weight. SSR 16–3p, 2016 WL 1119029 at *8. Indeed, even "symptom-free periods may be consistent with disability." *Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1166 (D. Or. 2010); *accord Lester*, 81 F.3d at 833. Moreover, the cited medical records indicate that plaintiff consistently suffered from "high anxiety" and depression. Tr. 363 & 416; *see Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace" because ALJs must read these reports "in context of the overall diagnostic picture"). The ALJ erred by citing

sporadic and slight improvements in plaintiff's mental health symptoms without explaining how those improvements conflicted with plaintiff's testimony.

Finally, the ALJ gave plaintiff's pain testimony less than full weight because the ALJ found that objective evidence does not fully support the severity of plaintiff's condition. However, the ALJ does not identify what testimony the objective evidence does not support or how that testimony is inconsistent with the record as a whole. The ALJ's proffered reason is not clear, specific, or convincing because "[g]eneral findings are insufficient[.]" *Lester*, 81 F.3d at 834. Instead, the ALJ must identify "what testimony is not credible and what evidence undermines" plaintiff's pain testimony. *Id.*; *see Vasquez*, 572 F.3d at 592 ("[T]he ALJ made no specific findings in support of her conclusion that [plaintiff's] claims were not credible, other than the vague allegation that they were 'not consistent with the objective medical evidence.'"). Because the ALJ does not provide an explanation for his conclusion, the Court finds the ALJ erred by failing to "be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds[.]" *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

Even though the Court found several of the ALJ's reasons to discredit claimant's testimony unavailing, the record evidence of symptom exaggeration, failure to cooperate in the disability process, and diminished pain due to methadone treatment are specific, clear, and convincing reasons to give less than full weight to plaintiff's testimony about her symptoms. The ALJ's errors in evaluating plaintiff's symptom testimony were therefore harmless and the ALJ's treatment of that testimony will not be disturbed.

//

//

II.     *Crediting Dr. Prapong's Opinion*

Plaintiff argues that the ALJ impermissibly gave Dr. Prapong's medical opinion little weight by failing to provide sufficiently specific and legitimate reasons for discrediting Dr. Prapong. Defendant responds that the ALJ appropriately discounted Dr. Prapong's opinion based on substantial evidence in the record.

Traditionally, "a treating physician's opinion is generally afforded the greatest weight in disability cases[.]" *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting *Tonapetyan*, 242 F.3d at 1149). This is so because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). As such, "[i]f a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original). Further, even if "the treating physician's medical opinion is inconsistent with other substantial evidence in the record, '[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR [§] 404.1527.'" *Holohan*, 246 F.3d at 1202 (quoting SSR 96–2p) (alterations in original. Even if the ALJ declines to accord the treating physician's opinion "controlling weight," in "many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted[.]" *Id.* "However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

"To reject the uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing reasons for doing so." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Because neither the ALJ nor defendant identify a conflicting physician testimony and the Court is unable to find a clearly contradictory testimony from a physician, the Court finds the ALJ must identify specific, clear, and convincing reasons to discredit Dr. Prapong's testimony of plaintiff's limiting conditions.

Dr. Prapong established care with plaintiff on April 4, 2013 and saw claimant every three to six months. Tr. 21 & 41. Dr. Prapong opined that a "mental impairment" that began in 2007 "is expected to be of long-continued and indefinite duration [and] substantially impedes" plaintiff. Tr. 307. Because of claimant's severe depression, chronic pain, fibromyalgia, patellofemoral syndrome, opioid dependence, reliance on a cane for walking, impaired cognition, anxiety that results in anhedonia, low energy, poor motivation, and scattered concentration, Dr. Prapong concluded claimant would likely miss more than two days of work every month and "almost certainly . . . would not show up to work with any regularity." Tr. 478. Dr. Prapong also found that plaintiff could not stand for more than two hours a day, sit for more than three hours a day, or continue standing or sitting for more than 30 minutes at a time. Tr. 476. In addition to identifying mobility issues with her upper and lower extremities, Dr. Prapong also explained that plaintiff is markedly limited in interacting with others, maintaining her attention, and reliably conducting routine tasks. Tr. 476–77. The ALJ considered two different documents containing Dr. Prapong's opinion. First, the ALJ gave little weight to a U.S. Department of Housing & Urban Development's Safe Home Verification of Disability form because it "was not accompanied by any report of objective examination findings or additional documentation explaining the nature of the claimant's impairments." Tr. 23 & 307. "[T]he ALJ need not accept

the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. Here, Dr. Prapong opined that plaintiff suffered a severe mental impairment that qualifies her for higher priority in finding affordable housing by checking a box. The ALJ did not err in rejecting this checkbox form and its conclusory statement that plaintiff suffers a disabling mental impairment.

The ALJ also gave little weight to Dr. Prapong's April 7, 2014 questionnaire for three reasons. Tr. 23 & 475–78. The ALJ explained that (1) Dr. Prapong primarily treated plaintiff for pain and opioid dependence rather than a full panoply of health issues and only treated plaintiff's depression with trials of medication; (2) plaintiff showed improved pain symptoms once her doctors treated her with methadone; and (3) plaintiff's depression improved with Prozac.

The ALJ's first reason for discrediting Dr. Prapong's testimony appears to be based on plaintiff's limited treatment relationship with Dr. Prapong. Under 20 C.F.R. § 416.927(c)(ii), ALJs consider the "[n]ature and extent of the treatment relationship" when determining how much weight to accord physician testimony. Here, however, the ALJ unfairly mischaracterizes the record by ignoring Dr. Prapong's treatment of plaintiff's mental health limitations, like her depression and anxiety. *See e.g.*, Tr. 336–37, 346, 352, 361, 416. Further, the ALJ failed to explain which portions of Dr. Prapong's opinion are unrelated to his treatment relationship with plaintiff.

Substantial evidence supports the ALJ's second reason for giving Dr. Prapong's testimony less than full weight. By her own admission, plaintiff's pain has subsided and her current methadone treatment helps manage her physical symptoms. Tr. 40 & 57–58. Plaintiff's testimony suggests that she is no longer as limited by pain as she once was. To the degree that

Dr. Prapong's 2014 assessment conflicts with that testimony, the ALJ articulated a clear, convincing, and specific reason to afford Dr. Prapong's testimony about plaintiff's pain and accompanying physical limitations less than full weight. This inconsistency does not, however, justify discrediting Dr. Prapong's testimony concerning the severity of plaintiff's mental and cognitive symptoms, because there is no evidence methadone alleviates those symptoms.

Third, the ALJ's finding that plaintiff's improved depression symptoms contradict Dr. Prapong's testimony is unpersuasive. The ALJ misconstrued plaintiff's remarks at the hearing. Contrary to the ALJ's suggestion, plaintiff testified Prozac is not providing much relief. Tr. 42. Moreover, Dr. Prapong specifically opined that even though Prozac helps with plaintiff's mood, plaintiff still suffers from "high anxiety" and depression. Tr. 363. This indicates that Dr. Prapong took Prozac's effects into account when forming his opinion.

The ALJ provided a sufficient reason to give little weight to Dr. Prapong's opinion about plaintiff's physical limitations. But with respect to plaintiff's cognitive limitations none of the three reasons the ALJ cited support affording Dr. Prapong's testimony little weight.

III. *Crediting Dr. Adler's Opinion*

Plaintiff argues that the ALJ erred by according Dr. Adler's opinion only "some weight." Tr. 24. Defendant responds that the ALJ properly discredited Dr. Adler's testimony given the state agency medical consultant's finding that his opinion was "an overestimate of the severity" of plaintiff's restrictions and limitations were "based only on a snapshot of her functioning." Tr. 82. Because the opinion of Dr. Adler, an examining physician, conflicts with the opinion of the state agency medical consultant, the ALJ was required to provide specific and legitimate reasons for affording it less weight. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

On December 10, 2012, Dr. Adler performed a consultative exam. Tr. 296. After reviewing plaintiff's medical records and performing multiple exercises testing plaintiff's concentration, memory, and cognitive skills, he opined that "[t]he evidence for cognitive skill problems was much clearer and suggested that this is a significant" and "primary impairment, followed closely by her depression." Tr. 298. While the ALJ characterized Dr. Adler's report as diagnosing only a "moderate . . . borderline, intellectual functioning," Tr. 22, Dr. Adler did not characterize plaintiff's cognitive impairment as "moderate" in his report, Tr. 296–98.

While the ALJ credited Dr. Adler's opinion that plaintiff suffers from "cognitive and social functioning," the ALJ listed four reasons for giving the opinion only some weight. *Id.* The ALJ found Dr. Adler's opinion (1) is inconsistent with the "record as a whole," which the ALJ suggests shows an ability "to sustain work activity;" (2) is based on only one encounter with plaintiff; (3) is not based on formal intelligence testing; and (4) mistakes symptoms of poor hearing for cognitive impairment issues. *Id.* The Court finds that the ALJ failed to identify specific, legitimate reasons for discrediting Dr. Adler's testimony.

First, the ALJ found Dr. Adler's opinion is inconsistent on the basis of the record as a whole because the ALJ found the record showed plaintiff was able to sustain work. However, the conclusion that plaintiff is not disabled cannot serve as a specific, legitimate reason to discredit Dr. Adler's testimony. The tautology does not address the evidence before the ALJ and suggests motivated reasoning, rather than the evidence, drove the ALJ's conclusion. *Bunnell*, 947 F.2d at 345 (explaining the ALJ's rationale "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds"). Moreover, contrary to the ALJ's suggestion, the fact that plaintiff worked before her

alleged disability onset date is not substantial evidence that plaintiff has an ability to sustain work six years later.

Second, the ALJ discredited Dr. Adler's opinion because Dr. Adler based his conclusions on one encounter with plaintiff. Endorsing that reasoning "would have the result of discrediting examining physician opinions practically as a matter of definition" because by definition, many examining physicians only meet claimants only once. *Sorrell v. Colvin*, 2015 WL 1152781, at *7 (N.D. Cal. Mar. 13, 2015) (citation and quotation marks omitted); *see Sorg v. Astrue*, 2009 WL 4885184, at *18 (W.D. Wash. Dec. 16, 2009) (noting that ALJs can "properly rely on the findings and opinions of an examining medical source who has seen and evaluated a claimant only one time"). "The fact of a one-time examination, without any analysis or assessment as to the nature and quality of that examination, is not a sufficient basis for the ALJ's decision[.]" *Williams v. Colvin*, 24 F. Supp. 3d 901, 914 (N.D. Cal. 2014).

Third, the ALJ discredited Dr. Adler's testimony on the basis that he did not rely on formal intelligence testing. However, even if this is a legitimate reason to give Dr. Adler's opinion less weight, the reason is not specific enough to credit the ALJ's holding. *See Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required.").

Finally, the ALJ gives less weight to Dr. Adler's opinion because Dr. Adler "questioned whether the claimant's problems with attention were related to a hearing deficit." Tr. 24. In Dr. Adler's initial examination, Dr. Adler reported that plaintiff had difficulty understanding and responding to his simple questions. Dr. Adler had to repeat multiple questions before plaintiff was able to respond. If there were any evidence in the record that plaintiff suffered from a

hearing impairment, this might be a reason to discredit Dr. Adler's opinion. But even defendant recognizes "the record did not reveal any such impairment," Def.'s Br. 16 (doc. 17), and a consultative examiner noted plaintiff's "allegations of hearing difficulties are not supported" by medical evidence. Tr. 77. Plaintiff's alleged hearing problems therefore are not a legitimate reason to disregard Dr. Adler's opinion.

Defendant's argues that the opinion of Dr. Westfall, a reviewing physician, justifies affording Dr. Adler's opinion less weight. That argument is unavailing. Here, Dr. Westfall rejects Dr. Adler's findings as "less persuasive" and opines Dr. Adler overestimates plaintiff's symptoms, although Dr. Westfall points to no clinical evidence of her own. Tr. 82. The opinion of an examining physician cannot, by itself, justify rejecting the opinion of an examining or treating physician. *Morgan*, 169 F.3d at 602. This reflects long-standing precedent that the "opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830. Moreover, the ALJ did not rely on Dr. Westfall's opinion in discrediting Dr. Adler's opinion, and this Court is "constrained to review the reasons the ALJ asserts[.]" *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (quotation marks omitted). As such, the Court finds the ALJ has not articulated specific or legitimate reasons to give Dr. Adler's testimony little weight.

IV.    *Harmful Error*

The Court's inquiry does not stop when it finds that the ALJ erred. "[T]he [C]ourt will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038. In order to reverse an ALJ's decision, the Court must find that the ALJ's error was consequential to the ultimate disability determination. *Id.* As such, where a court can "confidently conclude that no reasonable ALJ . . . could have reached a different disability determination," the ALJ's error is

harmless and, therefore, not reversible. *Robbins*, 466 F.3d at 885 (quoting *Stout*, 454 F.3d at 1056).

Here, the ALJ did not harmlessly discredit Dr. Prapong and Dr. Adler's testimony. The ALJ failed to provide sufficient reasons to discredit Dr. Prapong's opinions about plaintiff's severe mental health and cognitive disorders. In particular, Dr. Prapong opined that plaintiff would be unable to regularly attend work and would experience marked difficulties in completing routine tasks. Dr. Adler assessed similar mental limitations. The VE testified at the hearing that a person with plaintiff's RFC would not be able to find and maintain gainful employment if she were 20% less productive than the average worker. Tr. 65. The Court cannot conclude that no reasonable ALJ would have reached a different disability determination.

## V.    *Type of Remand*

In some cases, it is appropriate to credit as true evidence that the ALJ improperly disregarded and remand for the immediate award of benefits. *Lester*, 81 F.3d at 834 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'"). Before courts may exercise their discretion to credit improperly rejected testimony as true and remand for an immediate award of benefits, the plaintiff must show that:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if these three requirements are met, remand for further proceedings is still the proper course if "the record as a whole creates serious doubt that a [plaintiff] is, in fact, disabled." *Id.* at 1021.

Plaintiff does not meet these three preconditions. As the Ninth Circuit explained, in administrative proceeding "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). While the Court found the ALJ improperly discredited two physicians' opinions, the Court is unsure if plaintiff is disabled under the Act. *Garrison*, 759 F.3d at 1022. Particularly in light of plaintiff's new methadone treatment that reduces her pain symptoms, new proceedings would be useful to incorporate the current status of her symptoms and effects of her treatment into the RFC. Additionally, should plaintiff be found disabled on remand, the ALJ will need to revisit step one of the analysis and determine when she last performed work at the substantial gainful activity level.

While it is possible to credit as true improperly discredited physicians' opinions even when immediate award of benefits is improper, the Court declines to exercise its discretion to do so in this case because plaintiff is not "of advanced age and" has not "already experienced a severe delay in her application." *Vasquez*, 572 F.3d at 593; *see also Garrison*, 759 F.3d at 1021 (explaining courts should balance the "efficiency and fairness" of further proceedings against the certainty plaintiff is disabled under the Act). Therefore, the Court remands for further proceedings consistent with this order.

## CONCLUSION

The Court REVERSES AND REMANDS the ALJ's decision for further proceedings.

IT IS SO ORDERED.

Dated this ₂nd day of April 2017.

_____
Ann Aiken
United States District Judge